DJF:RDE:cmg

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES LEATH,** | : | |
| Plaintiff | : | **Case No. 3:17-CV-1418** |
| | : | |
| v. | : | **(Munley, J.)** |
| | : | **(Arbuckle, M.J.)** |
| **UNITED STATES OF AMERICA** | : | |
| **et al.,** | : | |
| Defendants | : | **Electronically Filed** |

## STATEMENT OF MATERIAL FACTS

Defendant, the United States of America, by and through counsel, and pursuant to Local Rule 56.1, hereby submits the following statement of material undisputed facts in support of its motion for summary judgment.

**A.     Leath's Altercation With Charlton**

1.     Leath is federal inmate who was formerly designated to the Special Management Unit (SMU) at USP Lewisburg for closer supervision due to disruptive behavior.  Ex. A, Declaration of Susan Albert, ¶ 6; Attach. 4, Memorandum to Warden Maiorana dated June 5, 2015.

2.     On October 5, 2015, Leath arrived at USP Lewisburg.  Ex. B, Declaration of SIA James Fosnot, ¶ 2.

3.     On October 14, 2015, a Special Investigative Supervisor (SIS) interviewed Leath.[1]  Id. ¶ 3; Attach. 1, Intake Screening Forms.

4.     During the October 14, 2015, interview, Leath expressed no safety concerns and did not request separation from any inmate or class of inmates.  Id. ¶ 4.

5.     Leath and Trevor Charlton we not designated as separatees.  Id. ¶ 6.

6.     On April 24, 2016, BOP assigned Leath and Charlton to the same cell. Id. ¶ 7; Ex. A ¶ 8; Attach 6, SENTRY Inmate History Quarters.

7.     Neither Leath nor Charlton ever expressed to any BOP staff that one feared the other or would harm the other if not separated.  Ex. B ¶¶ 7-8.

8.     Charlton never warned BOP staff that he intended to harm Leath.[2]  Ex. C, Transcript of James Leath. Deposition taken November 14, 2018, at 23:7-15.

---

[1] SIS conducts interviews to identify other inmates who may be a safety concern for the inmate being interviewed. Ex. B ¶ 3; Attach. 1.

[2] Leath Dep. at 23:7-15:

> Q.     Did [Charlton] tell Hess – did Charlton tell Hess that if Hess didn't move Charlton, that Charlton was going to hurt you?
> A.     I never heard that.  [ . . . ].

9.   Prior to the altercation, Leath never felt threatened by Charlton and never told any correctional staff that he felt threatened by or needed to be separated from Charlton for his safety.[3] Id. at 27:4-8; 27:22-28:1.

10.   On May 30, 2016, at approximately 9:08 p.m., correctional staff observed Charlton standing at the cell door with blood on his face.   Ex. A ¶ 10; Attach. 7, Incident Report Number 2856472.

11.   Charlton reported that he and Leath had engaged in a physical altercation.   Id.

12.   Correctional staff immediately called for assistance.   Id.

13.   After assistance arrived, BOP staff handcuffed both Leath and Charlton and took them for immediate medical evaluation.   Id.

---

[3] Ex. C at 27:4-8; 27:22-28:1.

    Q.   Did you ever say to any guards that you felt threatened by Mr. Charlton and you needed to move your cell because of that?
    A.   No, I ain't never felt threatened by him.  I never felt threatened by him. [ . . . ].

    .   .   .

    Q.   All right.  So just to make sure that we're clear, you never said to any prison official that Mr. Charlton was going to physically harm you if you did not move cells?
    A.   No.  I said that we're not compatible. [ . . . ].

14.    Institutional medical staff examined Leath and subsequently transported him to an outside hospital.  Id. ¶¶ 11-12; Attach. 8, Medical Records, at 13-15.

15.    Leath returned to USP Lewisburg at approximately 6:12 p.m. on June 1, 2016.  Id. ¶ 14; Attach. 9, SENTRY Inmate History, at 2.

16.    Leath received care by medical and psychology staff for pain management, eye drops/ointments, dental concerns and poor vision prognosis.  Id. ¶¶ 15, 17; Attach. 8 at 4-7; Attach 10, Psychology records.

17.    Both Leath and Charlton suffered injuries from their altercation.  Chief among Leath's injuries was trauma to his left eye, resulting in complete blindness on that side.   Id. ¶ 11, Attach. 7 at 13-15.  Later examination by an optometrist unaffiliated with the BOP established that Leath had normal, 20/20 vision in his right eye despite his injuries suffered during the altercation with Leath.  Ex. D, Excerpt of Transcript of Kay Hazelett, M.D., F.A.A.O. Deposition taken March 29, 2019, at 14:8-24.

**A.    BOP Cell Assignment Protocol**

18.    Together, the Program Statement for Special Housing Units and Lewisburg's "Institution Supplement: 5217.02B, Special Management Units" (collectively, "Policies") govern how the Unit Team should make cell assignments. Id. ¶ 5; Attach. 2, Institution Supplement 5217.02B.

19.     The Policies direct staff to rely on inmates for information regarding their safety concerns.  Id. ¶ 9.

20.     Inmates can raise safety/security concerns with any staff at any time. Id. ¶ 10.

21.     An inmate may notify staff if he feels he cannot be housed with another inmate.  Id.

22.     If a threat is made or a concern is reported to staff, BOP staff will separate the relevant inmates pending the investigation.  Id.

23.     The Policies give BOP staff broad discretion in gauging the credibility of a complaint or threat and ultimately whether given inmates may safely occupy the same cell.

24.     Neither Leath nor Charlton expressed any safety concerns about being housed together.  Id. ¶¶ 7-8.

25.     There is no indication that any other person expressed any safety concerns to BOP staff about Leath and Charlton being celled together, or that BOP staff had any other reason to keep them separate.

**C.     Leath's Administrative Claim**

26.     The BOP keeps a computerized database of all administrative tort claims filed.   Ex. A ¶ 5; Attach. 3, Administrative Remedy Generalized Retrieval Report.

27.     On or about August 22, 2016, Leath filed an administrative tort claim, Claim Number 2016-06518, with the Northeast Regional Office (the "Claim").  Id. ¶ 3, Attach. 1, SF Form 95

28.     The Claim alleged that Leath's cellmate attacked him "without provocation" and that "corrections officers allowed this attack to occur and were aware of the attackers (sic) violent propensities."  Id.

29.     The Claim states that Leath was "taken to the hospital for emergency surgery."  Id.

30.     The Claim does not contend that BOP staff celled Leath and Charlton to encourage a physical altercation.

31.     The Claim does not contend that either Leath or Charlton requested a cell reassignment.

32.     The Claim does not contend that BOP staff encouraged Leath and Charlton to engage in a physical altercation.

33.     The Claim does not contend that BOP staff condoned Leath and Charlton's physical altercation.

34.     The Claim does not contend that BOP staff made a physical altercation between Leath and Charlton a precondition to a cell reassignment.

35.     The Claim does not contend that Leath was denied medical treatment for injuries sustained during a cellmate on cellmate altercation.  Id.

36.    The Claim sought a sum of $5,000,000.  Id.

37.    The BOP denied the Claim on February 13, 2017.  Id.; Attach. 2, Denial

Letter.


                                     Respectfully submitted,

                                     DAVID J. FREED
                                     United States Attorney

Dated:  August 27, 2019              s/ Richard D. Euliss
                                     Richard D. Euliss
                                     Assistant United States Attorney
                                     D.C. 999166
                                     Cristina M. Guthrie
                                     Paralegal Specialist
                                     228 Walnut Street
                                     Harrisburg, PA 17101
                                     Phone:  (717) 221-4482
                                     Facsimile:  (717) 221-2216
                                     Richard.D.Euliss@usdoj.gov


7

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES LEATH,** | : | |
| **Plaintiff** | : | **Case No. 3:17-CV-1418** |
| | : | |
| **v.** | : | **(Munley, J.)** |
| | : | **(Arbuckle, M.J.)** |
| **UNITED STATES OF AMERICA** | : | |
| **et al.,** | : | |
| **Defendants** | : | **Electronically Filed** |

## CERTIFICATE OF SERVICE VIA ELECTRONIC CASE FILING (ECF)

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.  That on August 27, 2019, she caused to be served a copy of the attached

## STATEMENT OF MATERIAL FACTS

via the Court's Electronic Case Filing System ("ECF") and that the Addressee(s) listed below are filing users under the ECF system.  Upon the electronic filing of a pleading or other document, the ECF system will automatically generate and send a Notice of Electronic Filing to all filing users associated with this case. Electronic service by the Court of the Notice of Electronic Filing constitutes service of the filed document, and no additional service upon the filing user is required.

**Addressees:**
Jonathan J. Sobel, Esq.
1500 Walnut Street, Suite 2000
Philadelphia, PA 19102
mate89@aol.com
Attorney for Plaintiff

s/ Cristina M. Guthrie
Cristina M. Guthrie
Paralegal Specialist